We'll hear argument first this morning in Case 16-299, the National Association of Manufacturers v. Department of Defense et al. Mr. Bishop? Mr. Chief Justice, and may it please the Court, the Clean Water Act provides for judicial review in the Courts of Appeals of seven categories of action by the EPA Administrator, and those are defined narrowly and precisely in Section 1369b1 of the Act. Had Congress meant for Courts of Appeals to review all national or definitional rules, it would have said so, as it did in the Clean Air Act, instead of listing a handful of particular EPA actions down to the statutory subsection. Our textual approach to subsections b1 and e, b1e and f, results in a comparatively clear jurisdictional rule that will eliminate many duplicative filings and years of litigation over where to litigate. Ginsburg What would happen if two questions were presented? The first involves whether the water in question fits within waters of the United States, that's a preliminary question, and then there's a challenge to a grant or denial of a permit. If you have those two combined, where do they go? Well, I think, Justice Ginsburg, the Court has never answered that question. In footnote 14 of the DuPont case, which involved 1304b guidelines, this Court suggested that when you have a challenge that includes actions covered by e or f and that are not covered by e or f, that it may be possible to exercise ancillary jurisdiction over the question not covered. Of course, the b2 preclusion should not apply in that case. But, you know, in any event, the challenge here is to the WOTUS rule by itself. Roberts One of the things putting aside — I mean, obviously, your main emphasis is, of course, on the statutory language. But one of the consequences that your opponent points out is that if you're correct and these actions are brought in the district court, each of the district courts will have to review the entire administrative record. And presumably, you could have dozens of the district courts engaged in that same activity, and then it would have to be done all over again when you get to the court of appeals. Martinez Well, I mean, I think their argument is that that is inefficient, right? But their rule— Roberts Well, I mean, their rule has its own efficiency problem, which is that it's not clear. And what you end up with under a rule that isn't clear is extremely inefficient. And, you know, here we have — this rule was promulgated in June of 2015. We have— Roberts But what about my efficiency concern? Martinez Well, I think the point I'm trying to make there, Chief Justice, is just that there are inefficiencies on both sides. This Court said in Sackett that efficiency does not conquer all. We would like to litigate these issues in the district court because we think that going through the district courts and the courts of appeals will produce more accurate decision-making and will tee the case up better for this Court to review. Roberts But I take it that means they're right, that that's what this would entail. The district court to do the correct job would have to look at the whole record. And as many district courts as these actions have been brought would have to do that. And then the court of appeals would do it again all over. Martinez That's true. And this has been followed in 11 district courts. I would say as a practical matter that what happens in these cases once the initial skirmishing is over is that parties on different sides tend to get together and dismiss certain cases and then join the others. Sotomayor I'm sorry. What would be the inducement for that if we were to say this needs to go to district court, why would parties run to the courthouse? They would either wait for an enforcement proceeding or wait for a denial of a permit or just wait. And the waiting would then result in the inefficiencies that the Chief Justice just pointed to. Even worse, because we would have a rule being constantly challenged and never truly finalized. Justice Sotomayor, there's no chance that anyone will wait to challenge a rule like this. There were dozens of suits in the district court and protective petitions filed within days of this rule coming out. This is a rule of critical importance to a I don't think there's any res judicata against the government, or is there? Or collateral estoppel. It wouldn't be res judicata. Could there be collateral estoppel? I don't believe that any of the conditions for estoppel, for either issue preclusion or claim preclusion, would apply here. If the government lost these cases, I assume at that point that it could back away before it litigated the rest. Ginsburg. Can you explain to me, I know you have a textual argument, but is there some sense in having individual permit, grant or denial go to the court of appeals and a question of the definition here of orders of the United States, that goes to the district court? One would think it would be just the other way around. Well, can I say two things about that, Justice Ginsburg? The first is that Congress itself put the 1342 MPDS permits into B-1. So those are reviewed in the court of appeals. It did not do that with 1344 fill permits. So Congress itself had no problem whatsoever with the idea that permit permits could be challenged in different courts, even though exactly the same WOTUS decision would be made in both of those types of permits. The second thing is that this idea that there's bifurcation here is false. In fact, WOTUS decisions are litigated in the district court. They're litigated in the district court when the rule is challenged under our approach here, but they're also litigated in the district court when a particularized decision is made. Riverside Bayview, Swank, Rapanos, Carabell, Sackett, Hawks, all of this Court's cases addressing this question have come up through the district courts. And these arise in enforcement proceedings, out of compliance orders, or out of permits. By the time that a party seeks an MPDS permit, it knows very well whether or not it has waters of the United States on its property. And if you think about your Miccosukee case or the L.A. River case, I think it's clear why. If you are building a huge pump, as in Miccosukee, or if you have a constructed part of the L.A. River, as in that case, you've already had to get the fill permit before you ever get to the MPDS proceeding. As a practical matter, nobody challenges a WOTUS determination in a 1342 permit proceeding. No one is ever going to go through the incredible expense of that permit without first having determined with the agencies or through one of these more formal proceedings, like a JD, an issue in Hawk, which was reviewed. The JD, as you said, in Hawk is reviewed in the district. So no one is going to do that unless they know whether they have WOTUS. Kagan Mr. Bishop, could I step back just for a bit? I mean, I understand that your basic argument is the list is the list and what's on the list controls. But if I said to you, what was Congress's theory behind the list, do you think Congress had one? Bishop To be honest, I do not. I cannot explain that, and I have never heard anyone explain that to me. I mean, if you look at if you look at the list, B, B-1-B references a provision that was never enacted, that doesn't exist. A puts into the courts of appeals promulgation of any standard of performance under Section 1316, but E puts in any approval or promulgation of a limitation under 1316. I mean, to me, this is a great surprise to me. There is an article that we cite in our brief, Mead and Fromhertz, that just goes through a lot of different jurisdictional provisions that Congress comes up with and explains that a lot of them are just not very carefully thought out. But what I would say is Kagan So your basic view is, look, you should just resign yourself to thinking of this as having no particular rationale. Congress said what it said. Nobody can figure out what the reasons are that Congress included those things and not other things. It's all a themeless pudding, and that's just what it is. Bishop And I think when you have that sort of Kagan Is that, that's the idea. Bishop Yes. I think, you know, if someone can come up with an explanation of this that makes sense, I'm very happy to hear it. I have yet to hear one. And that's why you stick to text, I think. Sotomayor Should we make sense of it? Meaning the government's position, at least with respect to E, is very simple. Once you define navigable waters, you say where an affluent limitation applies or doesn't. And so that's an affluent limitation. It's attractive, simple, certainly no more complex than your position in terms of its consequences.  Sotomayor Well, I would disagree with that, Justice Sotomayor. It's what it does is it eats up the entire B-1 statute. And Justice Kagan, these are not careful provisions. I'll give you that. But they are precise, okay? They can be applied. They are precise down to the last subsection in many cases. And so if you apply the statutory language, you have a clean jurisdictional rule. If you take the government's Sotomayor But we have to be clear, it doesn't swallow up enforcement actions. It doesn't swallow up the Army Corps permitting. There are some very big areas that it doesn't swallow up. It would swallow up. I think it would swallow up SACIT. I disagree there. The compliance order in SACIT, which went to the district court, told the SACIT not to discharge to identified waters of the United States and to restore the property. Now, the government says enforcement orders don't promulgate limitations within subsection E. But if an order like that that says this is a waters of the United States, do not discharge to it, please restore it, if that's not a limitation under E, how can a generalized definition of WOTUS possibly be such a limitation? I think that there are other, you know, there are other more complex, I think that's an easy one, there are other more complex ways in which the government, I mean, the government's reading essentially is, because of the breadth of 1311A, the government's reading is basically that anything that affects effluent limitations under the statute comes in under E. And if you think about Sotomayor Could you just give me one moment because you just mentioned the limitations. Give me your interpretation of a fluid limitation or other limitation. What would other, give me a concrete example of what would be an other limitation so that the two terms are not redundant. Other limitations means the non-effluent limitations in the four listed provisions. Give me an example, a concrete example. Let me give you four examples. So under 1311B, and there are many more, this is just a sampling. So under 1311B, EPA is directed to promulgate treatment standards for discharges to publicly owned treatment works. Under 1312, which is the water quality standards provision, it is directed to promulgate alternative effluent control strategies needed to meet water quality standards. 1316 is all about new source performance standards. And there, among the various things that the EPA is told that it should do, you can come up with operating methods for the source, operating methods for the source to meet these standards. And then under 1345, which is the sewage sludge, toxic sewage sludge, EPA is told that it can promulgate management practices. And the way these fit together is this. An effluent limitation is a specific, usually numerical, limitation on the quantities, rates, or concentrations of pollutants. But you can just set those numbers, but something else that you can do is you can say, well, what comes first? Before this pollutant comes out of the pipe, what can we do to reduce the effluent in that? And these four provisions list very precisely things like operating. Sotomayor, So give meaning to the word limitation. Well, because you're basically buying into the government's argument that it's anything related to effluent limitation. Not at all. It is not. Absolutely not. It is the limitation is an effluent limitation, which is defined in 36211. And there are limitations listed in the four provisions, 1311, 1312, 1316, and 1345. Those are very precise. That is not anything that affects an effluent limitation. It is precise, non-effluent limitation actions that Congress directed EPA to take to reduce effluents. And you don't need to go beyond those four. Those four provisions qualify the reference to other limitations. And what you don't do is look at 1311A, which is the overarching foundational provision of the statute, where if that is what defines what goes to the Court of Appeals under E, you basically have everything comes in. Let me just give one more example. I gave the example of SACIT. But it's, you know, 1313 is the water quality provision, TMDLs. It tells, it drives effluent limitations. You set the water quality for a segment of water, and once you've set that, it drives the effluent limitations that can be granted for point sources there. That is inconceivable. That doesn't fall under the government's view of things that affect effluent limitations. But the government has twice persuaded Courts of Appeals that 1313 lies outside E using textual grounds. What the government's position does is to make a horrible mess of this statute. And that mess can only be fixed in one way, and that's by looking at the precise language that is set out in B-1 and in E and F. And if I can reserve the rest of my time for rebuttal. Ginsburg-McGill. May I just ask you a question about if, as seems likely, the rule, the Waters of the United States definition of rule, is rescinded, is this case moot? I think it's just too early to say when or if it will be rescinded, Justice Ginsburg. The comments came in on September 27th. There were thousands of them. We don't know what the timetable is. We don't know what the government will do. But the notice, as I understand it, the notice and comment period has concluded. It has concluded. There were thousands of comments. At some point, the government will take action. We don't know if it will, if the agency will rescind the rule or not. It is clear that the environmental groups have said in the press that they will challenge any withdrawal immediately. And I would suggest that while that challenge, doubtless with a stay request attached, is pending, then the fate of the Waters rule is still up in the air. If I can reserve my time. Thank you, counsel. Mr. Murphy. Mr. Chief Justice, and may it please the Court. I'd like to begin with Justice Kagan's question about the overarching theory. I think there is a theory that explains both subsection E and the entire statute, and that theory is Congress went through and it looked at the specific delegations of authority in each of these statutes. And each of these provisions that is listed here in the seven sections, Congress directs EPA to do a specific type of activity. Subsection A, standards of performance, that's one provision in 1316. It tells EPA promulgate these standards. And that's true for each one of these, including subsection E. And I think that gives meaning to what a fluent limitation or other limitation should mean, because words are known by the company, they keep a fluent limitation or other limitation under the four listed sections. It seems to me it's talking about the types of limitations that those four sections specifically tell EPA, go engage in rulemaking, go do these types of activities. And each one of those is a distinct type of activity. Kagan in the government's brief, they ask, they say, well, what if we had just done it the following way? We, you know, issued a rule saying don't discharge, you can't discharge more than a certain amount of a certain pollutant in these following waters, and just list the waters in the rule that says how much of the pollutant you can't discharge. And they say under your rule that would come out differently, but it shouldn't come out differently. Goldstein, I think it would in this sense. Nothing in subsection or, excuse me, nothing in section 1311 directs them to do that. That would be the agencies acting under their general rulemaking authority, which would be in section 1361a. That's the catch-all. It says the agencies, you can issue rules to implement the act. That's exactly what the WOTUS rule is designed to accomplish. It's under that authority. Nothing in section 1311 either tells the EPA to do that type of action or the WOTUS rule here. Kagan. So let me make sure I understand. On that rule, if the ‑‑ if somebody challenged that rule, where would it go? That would ‑‑ so I assume that was the hypothetical ‑‑ You can't discharge more than X amount of Y pollutant in the following waters. Okay. So I think that that ‑‑ it was just defining waters. That would strike me closer to an effluent limitation because of the actual limitation, but I still don't think it would be under 1311. 1311 directs the EPA to ‑‑ Well, it's an effluent limitation, but you say it's not under 1311. Because it would be under 1361. So then it goes to the district court? Yes. Yes. It would go to the district court, I think. And ‑‑ but the common theme of all four of these provisions, I think, is it tells the EPA to undertake specific types of actions, 1311, the technology‑based limitations for existing sources, 1312, switches to water quality‑based standards, 1316, new source standards, and then 1345, sewage sludge. So I think that there's precise language directing EPA to engage in activity, but there's nothing in the statute that you can find that in any of these four that says, EPA, please promulgate a definition of waters of the United States. But do you think that the EPA has the power to issue the type of rule that Justice Kagan described? They very ‑‑ may not have the power. If the power exists, however, I do not think it would be a power under 1311. I think the power would flow from 1361, which is the general authority to implement the act. I'd also like to detourn briefly to the Chief Justice's concerns with efficiency. We recognize there are efficiency concerns on the other side, but as DuPont itself recognized in footnote 26, there's a competing wisdom to having things percolate up. With more review, there's a greater chance of having a correct result. And I think this is a national rule of everybody would agree it's very important. Everybody would agree that it's important to get things right. And I also think that there are both efficiency concerns and fairness concerns on our side. Efficiency concerns, this Court has repeatedly said, repeatedly said, including in Hertz and many other cases, that we should establish clear jurisdictional rules. This case is an example of why that presumption should exist. We've been litigating this jurisdictional issue for two years now. This is litigation that, as Hertz indicates, is better spent on litigating the merits of the rule versus litigating where to sue. I think our rule, following the plain text, adopts the clear rule. So for all sorts of future cases, it's much more likely individuals will know where to go issuing or denying a permit, if it actually means issuing or denying a permit. Ginsburg. Do you have any reason, Mr. Bishop was candid in telling us, there doesn't seem to be any rhyme or reason to this allocation? Well, I do think that the rhyme or reason I came up with is if you look at the seven actions, each of the sections that is listed promulgate a standard of performance under Section 306, a toxic effluent standard under 1317, make a determination with respect to a State permit program. These are all specific delegations of authority to the agency to engage in the specific types of actions that are listed. Do you think, General, I mean, does your interpretation depend very much on a specific understanding of the word under? In other words, you are reading this to say something like under the specific authority of Section 1311, 1312, but under is a kind of nebulous word. It doesn't say under the specific authority here. It just says under. You might read under a little bit differently. You might read under to say something like limitations regulating actions taken under Sections 1311, 1312, et cetera. So why should we read under your way rather than in some other way? Yes, because I think you under is absolutely, the Court has said it's a chameleon. But I think that when you look at it in the entire phrase, promulgate or approve an affluent limitation or under limitation under these things, I think that our position relies on the entire phrase. And when you say promulgate a limitation under, that means that you're enacting a regulation that is a restriction and that it's under these provisions. I just do — I mean, I think I take the point, but how about promulgating a limitation regulating actions taken under 1311, 1312? If you did it that way, it would come out the government's way. I'm not certain that it would, because this still would not qualify as a limitation, it seems to me. I think their approach would have to be affecting a limitation that exists within, because that's essentially what they're arguing, that by defining the waters of the United States, they're triggering the ban on discharges in 1311a, and that's sufficient. But the statute says promulgate a limitation. When you hear the phrase promulgate a limitation, the thing being promulgated, itself, must be the restriction, but they don't rely on that. Kagan Yes, but on the other hand, you yourself treat this rule as very much limiting your activities. It is a limitation on activities. It's combined with another limitation to say you can't discharge pollutants where you want to discharge pollutants, but it's very much part and parcel of the limitation that you're objecting to. So I think the limitation is 1311a. That's why they have to always change the verb from promulgate to impose. It certainly has a practical effect of triggering a limitation, but so did the compliance order in Sackett, and that flowed out of the district court. I just think the practical effect test, if you're going to adopt that, it's going to be unclear in most cases whether something has a practical effect of triggering a limitation under 1311a. So I think if you're – if we're in the Hertz world where we're thinking of what's the clear rule, I think we provide a clear rule that's going to be easily administerable in the range of cases. Under the government's approach, because it's vague, I think it's going to lead to a lot additional – of additional litigation over where to sue. I guess the final point I would make is we don't just have efficiency concerns on our side. We have fairness concerns on our side as well because of the B-2 ban on raising things that could have been raised under this jurisdictional provision, and later in civil or criminal enforcement proceedings. Justice Powell, when talking about a very similar review preclusion provision, suggested that he would interpret it narrowly if he could. In the Clean Air Act, it's quite broad. It's impossible to interpret it narrowly. But I think the presumption of agency action review that was at issue in Sackett would trump the government's position, given the unfairness that could arise. And the Court should keep in mind that every one of the Court's cases that it has considered under the Waters of the United States rule, those are cases that have arisen in enforcement proceedings or other type of district court review. All of those under the government's approach could now not be allowed, if the government's approach is allowed, because if circuit review exists, then the B-2 provision kicks in and it says that you cannot have review in later criminal or civil enforcement proceedings, and I think that's unfair. I think that Sackett clearly indicated that the presumption of agency action review extends to this Act, and it expressly said that that presumption is a repudiation of the principle that efficiency of agency action should trump all. And so I think that fairness concern equally applies here. I also think that there are due process concerns as well. Thank you. Roberts Thank you, counsel. Ms. Kovner. Kovner Mr. Chief Justice, and may it please the Court. In order for a person to know what they are prohibited from doing under section 1311, they need to know both numerical constraints that apply under that provision and geographical constraints under that section. A broad definition of Waters of the United States imposes broader limitations under section 1311, and a narrower definition imposes narrower limitations under section 1311. Indeed, the challengers are here today challenging the rule precisely because they submit it's going to impose broader restrictions on their conduct under section 1311. And any doubt about whether geographical limitations like this ought to be treated as limitations under section 1311 and subject to circuit court review is resolved by this Court's cases interpreting this very provision, which indicate that the provision should be interpreted to avoid the irrational bifurcation of similar or related decisions. And none of the challengers here have explained throughout the briefing or here today why it is that Congress would want to bifurcate the geographic aspects of limitations under section 1311 from the numerical aspects. Indeed, I think as some of the questioning points out, this is the equivalent of a rule that does those two things together that simply says a person shall not in the following location discharge pollutants without a permit. Alitoso, is there anything in the definitional section that will not indirectly affect something that is listed in 1369b? And if that's the case, why didn't Congress just include the definitional section in the list of covered actions? Well, I think the key here is that there are 1311, there are actually only a handful of critical terms, and we're defining one of those critical terms. So it's not our submission that any term that was defined throughout the statute is going to affect limitations under section 1311. But here, where you're defining, in effect, discharge of a pollutant, which is defined as discharging to the waters of the United States, you are expanding or contracting the scope of the prohibition under section 1311. And that's why it's the equivalent of a rule that says on the following waters, you shall not discharge pollutants under section 1311. That would certainly be a limitation that's promulgated under section 1311, and it's exactly what's happened here. Kennedy, so your position is that interpreting a definitional phrase is necessarily a limitation? I think it's a rule. Is that a correct way to characterize your argument, or not correct? I think I might characterize it a different way. I think we have a clear rule that's derived from just what is a limitation, and we think a limitation, the dictionary definition is it's a restriction. So the rule has to impose a restriction under section 1311. That this rule does that. It is the equivalent of a rule saying you shall not discharge pollutants into the following locations except in compliance with the terms of section 1311. So, I mean, there has been a lot of talk of clear jurisdictional rules on the other side. I think our rule is very clear. It's just does it impose a limitation under section 1311. I took our friend, you know, Petitioner, to get up and say essentially he agrees with that. You look to is it a limitation, and then you look to is it a limitation that arises under one of the enumerated provisions. Roberts' It seems more natural to regard the WOTUS rule, though, as not imposing the limitation, but telling you where whatever limitations are imposed will apply. It is not a specific limitation. It kind of sets the canvas and the rules kind of tell you what that means. I think there are the equivalent. They are doing exactly the same thing here. You could phrase it as it's a definition that tells you where the limitations apply, or you could phrase it as just part of the limitation. It's a limitation that applies only in certain places. And if you look to this Court's cases in DuPont and Crown Simpson, I think they tell you two things. First, you look to whether a functionally similar rule would have gone to the courts of appeals. And if it does, and I think, you know, I think a functionally similar rule would go to the court of appeals here if it just included the geographic scope in the rule. Roberts' Crown Simpson really was a denial of a permit. I think you're trying to get too much out of that. In vetoing the State's grant of the permit, it denied those permits. That's right. But I think what one of the reasoning that the Court uses is it says, is this functionally similar to a rule that would go to the court of appeals? And here, this is functionally similar to a rule that says, the effluent limitations that we're promulgating apply in the following places. You shall not discharge in the following places without a permit. Ginsburg's What goes to the district court under your reading? No, Your Honor. I think if the EPA promulgated a restriction that said, for instance, you shall not discharge more than 1,000 parts per million of a certain pollutant into the following that would go to the court of appeals. And I'm not sure. I'm asking what goes to the district court. So things that go to the district court include decisions on one particular type of permit, fill permits. Your Honor's opinion in NRDC lists a number of additional actions that go, you know, things that aren't effluent limitations, but are other kinds of rules, for instance, rules for grantmaking, rules for certain kinds of vessel waste. Those aren't effluent limitations, and those are the kinds of things that go to the district court. The most It seems to me the most basic question, are these waters of the United States? If you're a farmer somewhere and you don't think these are waters of the United States, and you go to the district court, they're going to tell you, well, sorry, you're out of luck, because you didn't challenge this within 120 days of the promulgation. Well, I think so — I think if you were challenging whether a particular land was a water of the United States, you could go to the district court and get a jurisdictional determination applying to the particular facts of your case. Roberts' Yeah, yeah, but if you think that's the definition is what you want to challenge, not whether the definition applies to your land. It's just like, Your Honor, if that farmer wanted to challenge the numerical constraints that applied, they ought to go to the court of appeals to challenge the numerical constraints. Now, I do think there's this separate question that the other side raises of, what if there is an enforcement action and you want to contest as a defense and an enforcement action the definition of waters of the United States? And I think what Harrison indicates, interpreting exactly the same sort of type of scheme in the Clean Air Act, is there may be, if there is any due process issue, if that farmer needs to have a venue to challenge the rule as a defense, that's an issue with enforcement of B, B-2. That's an issue with the enforcement of the bar to raising that kind of challenge. Roberts' Does that mean he can challenge it in an enforcement action? It means that if there's any due process problem, the appropriate way to address that is by a narrow interpretation of B-2 that permits the Clean Air Act. Roberts' What else do you need to know to tell me whether there's a due process problem or not? He thinks the definition is not appropriate under the statute. You're enforcing it against him. Does he get to challenge it or not? He's not a lobbyist. He's a farmer in Kansas. And all of a sudden you come in and you're telling him that he can't, you know, discharge whatever into the lake, and he says, well, I don't think that's the right definition. And you say, well, you should have come to Washington four years ago. So the Court has reserved in Harrison in interpreting essentially the same provision whether there is a due process issue that somebody needs to be able to bring a challenge when there's an enforcement action. If there is, Your Honor, it's not a limiting the definition of effluent limitation is not going to solve that problem, because there are inevitably some limitations that are going to be covered by B-1. So if there is a due process limitation, the way to address that has to be to say whatever those limitations are that are covered by B-1. Alito Well, if you will not say whether a person in that situation would be able to challenge it in a permitting proceeding, then I take your answer to be that the position of the United States is that the person cannot challenge it. That's the position you would take in that situation. I'm not sure, Your Honor. I don't think we have taken a position on that, because the Court has reserved it. I think the cases the Court would look to are cases like Yacus and Adama Wrecking, and I think it might depend on the position of the person. Alito Well, I don't understand how you can make the argument that you're making today without knowing what the – what your answer is to that question. But you won't answer that question. I think the reason, Your Honor, is that I think what the Court has expressly said about it is that to the extent there's a due process problem, the appropriate way to address that, the Court said in note 9 of Harrison, is by narrowing the definition of B-2, by narrowing the preclusion provision. And that's what the Court would have to do, because any limitation that's promulgated under B-1 is going to raise a problem. Breyer So it says here that there is a definition of effluent limitation. The definition of effluent limitation is a restriction established by the Administrator on quantities, rates, and concentrations. Well, once you have that in mind, it's hard to agree with you, because it looks as if, given the fact that we have A, C, D, and then E, which refer to those four sections, it would seem to do two things. F says, if they issue a, you know, you don't like, you want them to issue a permit and they won't, to you, go ahead, you can go to the court of appeals. A little unusual, since it's fact-based, but nonetheless. And then the other four that I just mentioned seem to say, if there are standards, which are like rules, and they're related to the specific definition I told you about or the equivalent, because standards of performance, after all, is a different set of words than effluent limitations. But the other limitations means something like that. And if that isn't the correct interpretation, then what in heaven's name are A, C, D, and F, or what are A, C, and D doing there? Because you don't need them. Indeed, your view, which makes sense, because maybe all rules should be reviewed in a court of appeals, but that isn't what it says. And I am rather stuck with that. And you say, well, why did Congress do it? The reason they did it is because they were worried about getting review of effluent limitations or the equivalent as defined up there in a court of appeals fast. And as to the rest of it, the rest of what the EPA does, they didn't care, or at least they didn't care here, or at least the hearings weren't about that, or at least the members of Congress weren't thinking about that. That's why they're left out. All right. Now, that's how I read it. And what is it that you want to say that will disabuse me of that reading? So let me give you first a textual response and then a response that goes to, I think, what Congress indicated it was thinking. So with respect to text, I mean, it says effluent or other. Oh, I know that. Other means the same, roughly speaking, as effluent limitations. But in respect to those things that aren't strictly labeled effluent limitations. So I think – I guess I would have two responses to that, Your Honor. The first is that's not how this Court has interpreted parallel language in the Clean Air Act. So in Harrison, Your Honor, the Court looks at a statute that's the same kind of list, a bunch of other enumerated actions, and then a – and any other action of the administrator catch-all at the end. And the Court gives the catch-all its ordinary meaning. It doesn't apply the canons Your Honor is talking about, things like adjusting generous. And the second thing I would say, Your Honor, is even if you want to apply sort of an effluent-related label, I think like Your Honor is suggesting, a closely related, closely connected limitations label, this is the first one in line, because this is the limitation that tells you exactly where the effluent limitations apply. It's as closely connected as you can get. And then just to go to what Congress was indicating it was thinking, I think if you look to the legislative history, it thought it was sending most national rules to the courts of appeals, not the district. Breyer, if it is that, if it is that, if the learned hand went and said you have to read these things like music, and the word other limitations certainly doesn't sound like a big catch-all. It sounds like a little catch-all. So if that's true, your reading, though, why did they bother writing this other stuff? Because after all, they would be up there in the court of appeals anyway under what you see as a big catch-all. Well, I think, Your Honor, if you, if Your Honor is inclined to give it a narrow reading, we would say just apply the principles that this Court has applied in other cases to construe how big that exception is, what its scope is. And what the Court has said is avoid the bifurcation of closely related decisions. And something that tells you the geographic scope of what effluent limitations are is just as closely related as you can get to effluent limitations. Ginsburg. So I mentioned the Clean Air Act, but that does have a provision that makes rules of national scope go to the court of appeals. That's what's missing here. Your Honor, we agree that this provision is narrower than the Clean Air Act provision, and that there are many rules that are going to be promulgated that don't go to the courts of appeals. So we're not reading this as though it said and any other action of the administrator like the Clean Air Act. What we do think it says is effluent or any other limitations under section 1311. So if it's imposing a limitation under section 1311, that's all we're saying is what goes to the courts of appeals. Sotomayor So basically you agree with your adversary that other limitation means any limitation. Is there any otherwise what limitations don't exist? We agree that it means just the ordinary meaning, restricted. Of any limitation. Yes. But I think we would also say, Your Honor, that if you were to take Justice Breyer's approach and say it has to be an effluent-related limitation, somehow connected to effluent limitations, we still win, because this is the kind of limitation you need to know in order to know where the effluent limitations apply. It's as closely connected as you can get. Let's assume for a moment that your view of any other limitation is right, that it's quite a broad phrase. But General Murphy, as I understood it, made a point that said, well, still, I mean, there's this under these following sections. And suppose he's right, that in the context of this whole provision, which starts out about promulgating limitations, that under is best taken to mean under the specific authority of. So is do you have any argument that this rule was promulgated under the authority of section 11, or was it pretty clearly promulgated under the authority of section 1361? We think it's promulgated under both. Whenever EPA promulgates a rule interpreting the statute, it's implying, it's applying in part the general rulemaking authority provision that Mr. Murphy alludes to. But it's also here relying on the ambiguity that exists. It's just, you know, that a statutory term is ambiguous, indicates that Congress was delegating to the agency some authority to resolve ambiguities in the statute. Here it's relying on 1311, which contains these terms that the EPA has the authority to define under the statute. Kagan in your own brief, in responding to some other argument in a footnote, you say the CWA authorized the administrator to issue the clean water rule, and then you have a citation, and it gives 1361 as the authority for that. And that seems, you know, pretty right to me, that you were relying on general rulemaking authority rather than relying on the provision that talked about specific affluent restriction. Well, just to be clear, Your Honor, section for everything that we do under section 1311, every kind of limitation we promulgate or approve, we are relying on that general rulemaking authority. I think it's important that section 1311 itself never says the EPA shall promulgate affluent limitations. I mean, it's simply in a, you know, we're relying on our section 1361 rulemaking authority to say we're the entity that gets to define what the limitations are going to be. We're relying on our general rulemaking authority to give content to definitions that the statute, you know, indicated are going to be defined terms and are going to impose limitations. For example, you know, other places in 1361, they talk about best pollution control technology as defined by the administrator. Well, I think if we defined best pollution control technology more stringently, it's pretty clearly going to be imposing an additional limitation under section 1311. Breyer, because if you say, if it's like affluent limitation, how you say you win even then, because this is close enough, but it's defined as, as I said, quantities, rates, and concentrations of constituents which are discharged. Now, how is a geographical regulation, a geographical limitation or expansion, how is that related to why that doesn't sound like a restriction on quantities, rates, and concentrations of discharges? Sure. It's a limitation that's very closely bound up with quantities and rates, because you need to know the scope of the definition of the scope of the definition. But discharge from a point, say, a geographical limitation is, okay, I'll get that. So in order to know the scope of that obligation, of the limits on rates or points, you need to know where those limitations apply. I mean, it's literally something you need to know both in order to know what you're asking. See the point? I'll think about it. Ginsburg. May I ask you about the mootness problem? Isn't it so that now the government is poised to moot this case any time it wants it? It has announced that it is rescinding this rule, go back to the old rule, and it has no dissent comment, and tomorrow it could say no more new orders of the United States rule. I think my friend on the other side's description of the state of affairs is correct in that we've completed the notice and comment receiving phase, and the agency is now evaluating that, those comments that it's received. And it is possible that the agency will, after that, decide, as it's proposed to do, decide to rescind the existing rule. I do think it points up, Your Honor, the sort of practical implications here. I mean, for example, the agency has received about 500,000 comments about the new proposed rule. It received, I think, about twice as many comments. It assembled a 350,000-page administrative record about the old rule. Sotomayor, just realistically, is it possible this case would be mooted this term, or is this process one that innately will take longer than this term? I don't know the answer to that question. When it became a possibility that the rule would be rescinded, we advised the Court and suggested it might want to consider holding the case in abeyance to see what have any sort of different information now, aside from that the notice and comment  Roberts' Nothing in the pending proceedings addresses the jurisdictional issue that's before us right now, does it? The jurisdictional issue would arise again, yes, under a new so I think if, I tend to agree that if the Court rescinded the rule that is at issue here, this case would become moot, but the issue would arise again in the context of the new order to the United States rule. And, you know, I think what you would have to allude to the practical consequences that Your Honor discussed earlier is, if this case exemplifies, you would have people go into dozens of district courts, those courts would be reviewing hundreds of thousands of pages of administrative record, they would get to the courts of appeals, they would do that again with no deference to the initial district court decision. It's really inimical to what this Court indicated in Crown Simpson and in other cases was the purpose of this provision, which is to give clarity. Well, but counsel, under Hertz, we prefer a clear rule. Yes. And if that's the thumb on the scale, I thought you had a pretty interesting argument that, you know, we'd go to the courts of appeals and that would be more efficient, until you, your interaction with the Chief Justice and Justice Alito, where you indicated you wouldn't necessarily foreclose district court actions either. So where does that leave us in terms of a clear rule? Yeah. I the Court has indicated clear rules are important. We think we have the clear rule here. You just look to the other. Well, but you wouldn't stand by that rule when pressed by my colleagues. Oh, I don't think so. I think a person who's bringing a civil suit, absolutely under B-1, has to go to the court of appeals. The issue that this Court has reserved is, well, what if you are, what if you're the defendant in an enforcement action? Right. Harrison indicates it's a separate question, and any issue that arises would be an issue with B-2. So if we're going to be in district court anyway, what's the efficiency gained here by your rule? Well, I think, you know, this case exemplifies when a major rule like this is promulgated, you have many, many people who want to challenge the rule. Here you have 15 people, you know, 15 parties walk in, and the question is, are those challenges going to be routed to a single court of appeals that can quickly resolve these challenges, or are they going to be considered in 15 different district courts or a dozen different district courts, and then go up to the courts of appeals and have that 350,000-page record considered anew, we think it's inimical to the objective of obtaining certainty about what the scope of people's obligations are under Section 13-1. Sotomayor, I'm sorry, perhaps you can focus in what would be the difference. Let's assume we say this goes to the court of appeals, and the court of appeals says whatever, the rule is okay. Yes. Now, an enforcement action comes in and someone, some farmer, says, I don't, I shouldn't fit under this rule because this really can't be navigable waters. What happens then? Does the court say, well, that was litigated or should have been litigated before, so we're just not going to pay attention to this challenge? So I think then the question would be, notwithstanding whatever this Court has said about B-1, is there a B-2 due process exception? That question is going to be a live question no matter what this Court decides about the scope of B-1, because there are always going to be challenges that farmer brings. Roberts So in every enforcement action we're going to be having district courts decide this question anyway, potentially? No. No. I think the next question the court would need to address, and it will need to address no matter what it decides in this case about the scope of EFLON limitations, is, is there a due process requirement that in an enforcement proceeding somebody be able to challenge something that, you know, was promulgated through a rule? It's going to arise on either side's view of what the scope of EFLON limitations are. Alito Could I ask you about Clause F? What is your textual argument relating to that? Kovner Sure. So I think our argument derives in large part from what this Court said about F in Crown-Simpson, which is this Court indicated the provision should be construed not simply to sort of reach decisions that issue or deny a permit, but also decisions that are so closely related that it would be irrational to divide them up. And so then I think it goes to the point that Justice Ginsburg made and what this Court said in DuPont, which is if the individual, if this decision, when in the context of an individual proceeding, would go to the court of appeals, and, you know, here in the context of an individual permitting decision, what is the United States decision would go to the court of appeals, then it doesn't make sense for a categorical rule about that to go to the district court. And courts of appeals, sort of starting from Crown-Simpson, have adopted that approach. And so they've said sort of the basic rules that are sort of thresholds to whether you can get a permit or not go to the courts of appeals. Alito So the argument would be that the definition issues or denies a permit because it has an important effect on the issuance and denial of permits. Kovner It's a threshold for a permit to be issued, that it has to be awarded to the United But I do think, Your Honor, looking at that decision, if you look at the sort of functionally similar or identical language the court relied on and said if it's functionally similar, then it should go to the court of appeals, it has a lot of relevance under E, because this is the equivalent of a rule that says, you know, you cannot discharge pollutants on the following locations. If that goes to the court of appeals, then a rule that just specifies the geographic piece should also go to the courts of appeals. And, Your Honor, I do think it's worth highlighting that the approach that we're proposing of avoiding irrational bifurcation is an approach this Court set out about 40 years ago. Since then, the courts of appeals have been applying it. They have a construction of limitation. They've been looking to, you know, does this restrain industry? And they've been applying this sort of does this bifurcate decisions that are closely related analysis. They've been doing that for 40 years. In that time, Congress has amended this provision, but they haven't expressed any disapproval of that approach. And, in fact, whenever Congress has spoken about this provision, they've indicated they understand that national rules are generally going to go to the courts of appeals. Sotomayor, but we do have confusion just in this case. There was a circuit and district court split, so something about our rule is not clear. So tell me what we do to make it clear. How do we explain this to the courts below so that they have a clearer idea of what it is that's in and what's out? Yes. I think the clear rule, Your Honor, is to say if a rule imposes limitations under section 1311, then it goes to the courts of appeals. And I think if the court agrees to this. That has to do with whether it imposes a limitation on any of the words of 1311. I think that's why you limited it before. Sure. So I think The discharge of any pollutant in navigable waters. What other words are at issue? So, for instance, courts of appeals have consistently treated rules that interpret other provision, other words in 1311 like pollutant or point source. Those have also been going to the courts of appeals. And, Ms. Governor, suppose that the rule had restricted the class of waters of the United States. Would that still count as a limitation under your view? It would, Your Honor, because we don't think the right baseline is what was the pre-existing rule. We think you look at the rule by itself. The easiest way to see that, I think, is an analogy to numerical limits. So if the rule is initially you can only discharge 16,000 parts per million of a chemical and the rule has changed, so now it's you can discharge 18,000, it's a more lenient limitation, but you would still say that's an effluent limitation that goes to the courts of appeals. If there are no further questions. Thank you, counsel. Two minutes, Mr. Bishop. So the government's just conceded that it's been pushing this functional argument, functional effects argument for the last 40 years, which is true and some courts have accepted that, not all have by any means. But the result has been that for 40 years people have been filing duplicative actions and then litigating about where to litigate. This is the third case I've had like this. My clients have had dozens of cases where they've spent millions of dollars litigating about where to litigate. The answer to this is to look at the clear language of the statute, which is the only way to get a bright-line rule here. And just a part of that is the word under, Justice Kagan. And I think when you look at the, although this is a chameleon, when you look at the cases, two clear meanings for under that come out are one is authorized by, as you mentioned, and this is not authorized by, as the footnote that you indicated in the government's brief concedes, it's authorized by 1361A, not by 1311. Another meaning is as specified in, and that meaning is important here, because where the – because the second clause in E specifies limitations under these four provisions, and those four provisions, as Justice Breyer noted, list both effluent limitations and other types of limitations that cut back on what comes out of the pipe, but are not themselves effluent limitations. That is a perfectly clear meaning of E that does not reach a broad geographical definition of this type. Thank you. Roberts. Thank you, counsel. The case is submitted.